Argued and submitted June 13, affirmed July 28, 1980

FULLMER,
*Petitioner,*
*v.*
EMPLOYMENT DIVISION,
*Respondent.*

(No. 79-AB-1129, CA 16575)

614 P2d 623

Alan L. Gallagher, Legal Aid Service, Portland, argued the cause for petitioner. With him on the brief was Michael H. Marcus, Portland.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an appeal from a decision of the Employment Appeals Board finding petitioner ineligible to receive unemployment benefits because he left his previous job without good cause. Specifically, the Board found that petitioner could not reasonably expect the second job to continue. Petitioner claims that the Board's findings and conclusions are not supported by substantial evidence and that OAR 471-03-038 inadequately interprets "good cause" as used in ORS 657.176(2)(c) by substituting an equally imprecise term, "work that can reasonably be expected to continue." We affirm.

Our scope of review is defined by the Administrative Procedure Act. ORS 657.282; *McPherson v. Employment Division,* 285 Or 541, 545, 591 P2d 1381 (1979). We must determine whether the Board's decision in this case is supported by substantial evidence in the record. ORS 183.482(8)(c).

The petitioner testified that he quit his job for a better paying one. On the same day he quit he joined the Machinists Union. The union hires men out for work in the shipyards for two companies, Dillingham and Northwest Ship Repair. Petitioner worked for Dillingham, starting on the day after he quit his first job and continuing for nine days before being laid off. Petitioner did not receive an offer from Dillingham directly; he had no direct contact with them until the day he started work. He was sent to the job, which was secured before he quit his old job, by the union hall.

Petitioner testified that whether there is work or not depends on the availability of ships. The union sends people out when requests are received from the ship companies. Work is not just on a daily basis; once a person is called out, the job lasts until there is no more work to be done. The work is steady, and an individual does not have to worry about being laid off once seniority is attained. This occurs after working

"something like 30 consecutive days." In his application for benefits, petitioner stated that he thought the job would last longer.

Petitioner testified that he left his old job because the union told him specific work was available. He never testified that he thought or expected the job to be of such a short duration. However, he admitted that there would be layoffs until he obtained some seniority. The Board, in support of its conclusions, found that the new work involved being dispatched at a union hall to various shipyards that needed workers and that claimant recognized that there would be periods of layoffs, at least in the beginning. There is ample evidence to support the Board's decision that the second job taken by claimant could not reasonably be expected to continue.

ORS 657.176(2)(c) provides that an individual is disqualified from receiving unemployment benefits if he voluntarily left work without good cause. OAR 471-30-038(5)(a) provides, in part, that good cause includes, but it is not limited to, leaving work after accepting a definite offer of other work which can reasonably be expected to continue and pays an amount equal to or in excess of the weekly benefit amount.

In *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), the court held that it is for the agencies, acting under broad grants of power, to establish standards by which the law is to be applied. *See also Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973). *McPherson* did not specify whether the Employment Division's formulation of policy could occur on a purely ad hoc basis in the process of adjudicating individual claims, or whether the policy had to be expressed through the formal adoption of rules. In *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979), this court held that the Division must adopt rules. These rules, we said, must contain reasonable specificity. *Id.,* at 501. In *Oliver,* we held that the

term "labor market," as used in OAR 471-30-036, was not sufficiently specific in that it failed to indicate "who has responsibility to define a claimant's labor market, by what procedure that determination is made, and, most importantly, by what standards that determination is made." *Id.,* at 502.

Here, by contrast, the term under scrutiny is reasonably specific. "Work that can reasonably be expected to continue" has a commonly understood meaning and is not like the term "labor market," which can be defined to include different things by different people. *See also McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977).

OAR 471-30-038 sets forth general guidelines indicating what the Division believes to be important factors in determining whether an individual had good cause for leaving his or her employment. The standards are as close to specificity as the Division can be expected to come in formulating policy. *See Sun Ray Dairy v. OLCC, supra,* 16 Or App at 74-75. "We do not require the impossible. We require [only] that the agency formulate and publish the broad basis upon which" their decisions will be made. *Oliver v. Employment Division, supra,* 40 Or App at 501-502, n 1, quoting from *Sun Ray Dairy v. OLCC, supra,* 16 Or App at 74.

The order of the Employment Appeals Board is affirmed.